5-6 and we have one argument that has been waived today so I think everyone is here. Good morning and our first case this morning is United States against Sanchez and others. Mr. Hillis. Good morning. May it please the court and counsel. My name is Daniel Hillis. I represent Mr. Sanchez. Seventh Circuit case law is clear and the precedent is abundant. A judge's unambiguous oral pronouncement of sentence controls over any later written judgment such that any inclusions in the later written judgment are null unless they are intended to disambiguate something that's unclear in the oral pronouncement. But here the judge's oral pronouncement was clear and since it didn't include a bar for Mr. Sanchez from having contact with Mr. Kuhn or Mr. Ochoa Canela, the supervised release condition in the later judgment that prohibits contact is null under Albury, U.S. v. Devin Johnson, and the Orozco-Sanchez case. And furthermore, the discretionary condition for drug testing that is in the written judgment is likewise null because it wasn't orally pronounced either. Mr. Hillis, this is Judge Wood. Let me ask you a quick question. I don't remember the judge ever saying, I'm adopting the PSR. I thought those two contested names were in the probation office's thing, but the judge never actually said that that was being adopted or there was no agreement to adopt it, right? That's correct, Your Honor. That's my recollection as well. And so the government highlights the inclusion in the PSR, but the PSR wasn't adopted and the oral pronouncement would control. And so that doesn't import that material from the PSR such that the government can rely on it as it tries to in its brief. And you're relying very heavily on the one part of the court's comment where the court says, so there's no objection to him not communicating, being engaged with his co-defendants. And you read that to be the fourth superseding indictment. It has to be, Judge. Otherwise, there's no limitation on what it means to be a defendant or a co-defendant. It could be in another case from different jurisdiction, a different charging document from another period of time. At the time, my client pled guilty. He pled guilty to a specific charging document that listed who his co-defendants were, and these individuals weren't listed in that. And so it does not get the government where it needs to be to point to earlier documents from this proceeding, or as I gave my example, some other proceeding. This would just be too expansive an effort by the government to You're welcome. And so I will say that with respect to the supervised release condition, with the discretionary conditions, supervised release and drug testing, the government put stock in how my client asked for drug testing, and he did, and he wants to participate in RDAP. But the drug testing that he asked for or agreed to, I should say, would be the mandatory conditions. And that, by the way, is sufficient in and of itself. We do not need discretionary conditions when we have the mandatory condition, and it's not necessary for my client to participate in RDAP by having this condition. He can participate in RDAP, that wraps up in prison. This condition's not necessary to effectuate that either. With that, I reserve the balance of my time. Thank you. All right. Thank you. I believe Ms. Eisenman. Thank you, and may it please the court, Vanessa Eisenman on behalf of Edgar Roque. At Edgar's sentencing, the district judge committed two related procedural errors. First, the court erred as a matter of law when it indicated that 3553A6 only applied to codefendants. Second, even if that was not the case, the district judge committed a related Cunningham error when it failed to address Edgar's principal mitigation argument regarding the sentence of a co-conspirator, Sergio Ochoa. Just three quick points I would like to make about the record in which differs from some of the other codefendants here. First of all, disparity and Sergio Ochoa was a big topic of conversation at sentencing. This was defense counsel's principal argument in mitigation. It was raised in defense counsel's sentencing argument. It was raised multiple times at the sentencing hearing, and it was really the only thing defense counsel talked about, and didn't just talk about disparity generally, talked about Sergio Ochoa in particular. Second point I'd like to make is that this was not a frivolous argument. This was a co-conspirator, somebody who began this entire drug trafficking organization with Edgar Roque back in 2010, and participated with him in the same drug trafficking organization for two or three years. He was found to be a leader in his case. The government never disputed that there was a similar kind of large amount of drug weight, that he was a leader, that he was in the same organization. Nor did the government ever contend it with a frivolous argument. So Ms. Eisenman, I do have one question for you. The court does at one point say, you know, is it my sentence? You know, it says words to the effect of that she's comparing it to the defendants in the Roque conspiracy, I'll call it. But I don't see her saying, I'm refusing to think of other comparisons, you know, which would be, that would be a problem, given the nature of the 3553A6 focus. But I just can't find her refusing, other than on grounds that are within her discretion. She, as the government pointed out, just because Mr. Ochoa got a low sentence doesn't mean that that once and for all is the benchmark. No, absolutely not. And I want to make it clear, we're making a procedural argument right now. I'm not arguing substantive unreasonableness, just like the Panis case. If the judge wants to go back and give the same sentence, you know, I'm not saying it in this appeal that she can't do that. But there needs to be some sort of reasons on the record to prevent at least a Cunningham error. Now you were talking about the legal error. And I admit, it's not as clear cut as it was in Prado or some other cases. But I don't see anything in this court's case law saying that you have to have an express statement. In fact, in the Panis case, it was kind of unclear, the record was unclear as to whether the judge kind of inadvertently slipped into thinking that, you know, there was no discretion in some place where there was. And that's what I've argued here is that this this kind of wasn't in this comment without anything more with her just asking, no, that wasn't my sentence, was it? That in that comment without anything else, indicates that she may have inadvertently slipped into thinking, okay, that's not my dependent, I don't have to think about it, which would be legally incorrect. And then the, you know, other argument is that, okay, even if you don't, you know, buy the legal error and think the record is too ambiguous, definitely have a Cunningham error here, because this was defendants principal argument in mitigation, and her asking whether Ochoa was sentenced by herself definitely does not satisfy Cunningham's requirements, there has to be reasons given when you reject a defendant's principal argument in mitigation. This was a 20 year difference in sentence between two men who were co conspirators who were leaders. Could I reserve the rest of my time for rebuttal? Thank you. Waters is next. Your Honors, may it please the court, Robin Waters on behalf of Mr. Diaz. In imposing Mr. Diaz's nearly 21 year sentence, the district court committed two errors that warrant a remand for resentencing. As you just heard from Ms. Eisenman, Mr. Diaz is raising similar errors. And so I won't belabor the first error that you that you just heard about. But I'd like to focus my argument time on the Cunningham error. So first, the district court was aware from the record before including in the appendix pages one through 327 through 38 and 79 through 80. That in 2010, several of the defendants and co conspirator Sergio Ochoa began the rope of trafficking organization that Mr. Diaz only later joined in 2013. And that Mr. Ochoa actually organized his own and led his own drug trafficking organization from 2013 into 2015 in total trafficking drugs for eight years while Mr. Diaz did so for between two to three years. So contrary to the government's assertions on appeal, Mr. Diaz consistently argued including in the appendix pages 43, 62, 67, 80 and 81 through 84. That because of his smaller role and the shorter length of his participation in the conspiracy than the original members like Sergio Ochoa that he'd be sentenced less harshly than the original members of the drug conspiracy specifically, no higher than 15 years. And the 15 year ceiling is really important here because the 15 year ceiling was the reference that Mr. Ochoa sent in. So while it's clear from the record that Mr. Diaz's trial counsel didn't raise the issue as clearly as was raised in Mr. Rowe's sentence, this ceiling 15 year ceiling that was raised was the critical reference Sergio Ochoa sent in and he consistently argued that he was not an original member of the conspiracy, he was not one of the investors in the conspiracy and that he was not one of the high-level members. And no one, not even the government argued that he was a leader organizer or a high-level member. They contended that he was a sort of middle manager and Mr. Diaz contended that he was a courier or a lower level member of the conspiracy but no one argued that he was a leader organizer. So far from being so weak as not to even merit any discussion, this was an incredibly powerful argument that on one hand Sergio Ochoa receives this 15-year sentence and Mr. Diaz receives a 21-year sentence or a sentence nearly six years higher than a leader organizer. So this issue was not a merit discussion, it was a principal argument for mitigation and the district court failed to address it. It didn't address the argument. Judge, we have a legal question. We have cases that say that asserted Cunningham errors that deal with 3553A6 fall away if the sentence is within guidelines or below guidelines. In other words, that the guidelines calculation takes care of the issue of disparities across defendants and across cases and across the districts so that these kinds of Cunningham challenges when it comes to 3553A6 argument can't get off the ground. So... Other cases. Right. My read of the case law is that when it's a principal argument in mitigation and the district court passes over that error in total silence that that cannot ameliorate this issue. If a defendant in the case is that the government sites like Martin and Oliver for example just merely argues for a lower sentence but not specifically based on 3553A6 then passing over that general argument in silence is okay. But here there are several cases and we've cited them in our reply brief that say that the court cannot pass over in silence a principal argument in mitigation and the reason for that is that you can't be certain that the district what the district court would have done with that argument and here we have every reason to believe that the district court might have gone well below the guidelines because of the mitigation that Mr. Diaz has presented. So I see that I'm into my rebuttal time so I'd like to reserve the balance at that time. That's fine. Ms. Masters. May it please the court. Richard Roque raises three issues in the court today. He raises the legal issue of misinterpreted 3553A6. He raises a Cunningham issue and he also has an issue on supervised release condition. The government agrees that the supervised release conditions a couple of them don't conform with the written judgment and should be fixed. So I'm going to stand on the brief on those unless the court has any questions. As mentioned by Edgar's counsel the court committed procedural error in assuming that it was considering the sentences of separately indicted co-conspirators and in this case in Richard's case he compared himself to Manuel Aragon Contreras like Mr. Ochoa. He was a founding member of the Roque conspiracy and the court in sentencing made no reference at all to Mr. Contreras. And so again that's not harmless error because there's no indication that the court even considered the argument. Richard further urges the court to reject the notion that a court can satisfy the A6 requirements by comparing DTO sizes. First no such comparison even occurred in his case. The plain language of 3553A6 and precedent prohibits that. It's clear that have been very troubling here because Contreras was involved in both conspiracies and we know as we set forth in detail in Richard's brief that the government sought to hold Mr. Contreras responsible for a whole bunch of conduct that involved his participation in both conspiracies. So simply comparing the DTOs would not have captured what the relevant conduct was that the government sought to have Mr. Contreras held responsible for and further doesn't address the comparison that Richard made between himself and Mr. Contreras. Additionally as we also point out in our brief it appears that the court had different information in front of it at Ivan Diaz's sentencing which indicates that the court may have believed that the Ochoa Contreras DTO was much smaller than it actually was. In particular as we point out at Ivan Diaz's sentencing the court refers to $500,000 in money laundering being the scope of the money laundering for the Contreras DTO when instead Mr. Contreras himself was sentenced to $3.5 million in money for laundering and that is vastly vastly greater. He gets 140 months combined sentence for the drug conspiracy part in the money laundering. Richard gets 210 months and Richard was responsible for $40,000 in drug laundering. There is obviously a huge disparity there. As for Cunningham error there's no question here that Richard's disparity argument was a substantial one in mitigation. The court does the government did not contend otherwise and here again the court didn't address his money laundering disparity argument in particular. We provide details in our brief about four different comparators who got lesser sentences or the same sentence that he did for vastly greater amounts of money and further the government at Richard's sentencing specifically states that his amount of money laundering is small in comparison to his co-conspirators and yet it doesn't appear the court ever considered that. If the court has no other questions I would reserve my remaining time for rebuttal. Absolutely. Thank you. Thank you. Mr. Mohamed. Thank you. Good morning. May it please the court. My name is Amir Mohamed. I represent defendant Omar Ramirez on this direct appeal. Mr. Ramirez raises one singular argument on this appeal and that is the sentencing disparity argument pursuant to 3553A6. I'm going to pick up where Ms. Eisenman and Ms. Waters left off so I'm not going to belabor those points either but I will say it might there might be a little bit of confusion when taking a look at the appellant's brief and the government's response regarding sequencing. Mr. Ramirez his argument is that specifically his sentencing disparity is most in line with co-defendant Mendoza and the government's response brief indicates that Mr. Mendoza was sentenced after Mr. Ramirez but in fact they were sentenced on the same day. So I think it's fair to conclude that the district court was well prepared going into that particular day March 22, 2019. It's not as though there was a large gap in time between sentencing where other defendants were sentenced in between that could then negate the disparity argument. Mr. Mendoza received a 150-month sentence within guideline range. My client Mr. Ramirez received 188 but they were both low-level members of the conspiracy. In teenage friends that grew up together and were largely doing things together, discussing what they did together, their families were very supportive of one another even the families were even at each other's sentencing hearings to lend moral support. Neither one was a leader, manager, or supervisor. I will stipulate that when Mr. Ramirez was law enforcement on a foot chase through a backyard into a barber shop, very early in that foot chase he rid himself of a bag containing a firearm. But that being said, the 38-month disparity is too big. I grant that 38 months is not nearly as big as the 20 years that Ms. Eisenman's client is arguing or the six years that I think Ms. Waters' client is arguing but 38 months is still a large amount of time for two men who are very similarly situated. If the court has no questions I'll save the remainder of my time for rebuttal. That's fine, thank you. Thank you. And Mr. Nash. Yes, may it please the court. Michael Nash for Juan Cervantes. This brief raises three issues, the accuracy of the information upon which he was sentenced, the disparity of sentences, and then the refusal of the court or the lack of a minor role. I'll rely on the brief that I filed and the other arguments that have been made regarding disparity but would like to address the minor role. In United States v. Rita and United States v. Gall, the Supreme Court stated that the first thing a district court must do in a sentencing is correctly calculate the guideline range. The government points out and rightly so that the burden is on the defendant to show that. In this case, all the facts that were necessary to make the award of a minor role were before the other defendants were well known to the court at the time that the district court sentenced Mr. Cervantes. Those facts were front and center and our brief points out that in the government's own papers, Santiago proper, the government's sentencing memos and the other cases and the prosecutor's statement at various sentencing brought those facts forth. The minor role was not raised in the district court, although Mr. Cervantes' lawyer in the district court said that although it was awarded to his sister Angelica, it was denied to him, speaking of the government. So he did raise it in that sense and the comparative culpability was discussed. It's clear from the facts that were before the court that his role in this offense was substantially less than the average participant or as the other guideline comment says, most of the other participants. The facts regarding the others were discussed in our brief at pages 16 through 25 and actually in the government's brief from pages 19 to 43. The government specifically said that he was like Omar Ramirez and Ivan Diaz and that wasn't the case. If you look correctly, if you look carefully at the facts, you don't even have to look that give several factors, his understanding of the scope and structure of the criminal activity. There's none in this case that he did. He didn't participate in planning or organizing the criminal activity. His benefit was about $200 according to the government. He had no responsibility or discretion or decision making. He made seven pickups. The government in his brief talks about 15 and seven, but it concedes that at the sentencing itself, the government only talked about the seven pickups that he made. Seven pickups out of 161. I'm not too good at math, but I think that's under 1%. Whether you gauge what he did by common sense or the guidelines, it seems to me it's clear and was clear to the court that his role was minor. I know we have a lot of cases that say that couriers aren't automatically given a minor role and although might have some quarrel with them here, he was a minuscule part of a large operation that began and then divided into two conspiracies and became a third conspiracy when one of the conspirators kept doing it after the exposure of this one. I would ask the court to send Mr. Cervantes' case back for resentencing. If there are no questions, I'd like to save a few seconds, I guess, for rebuttal. Thank you. Thank you. Ms. Greenwald. Thank you. Good morning, your honors, and may it please the court. The district court did not, actually, I'm going to begin, let me preface this by saying I'm going to begin with the as preventing it from considering the Ochoa Contreras DTO defendants. The defendants point to no statements by the district court reflecting such a misunderstanding. For the court to have said neither of those sentences at Edgar Roque's sentence indicated nothing of the sort, especially when examined in context. If you look at page 76 to 77 of his sentencing transcript, defense counsel had started prior to the court statement, the defense counsel had said he was listing the sentences imposed by the court in the case. And then when he listed those, he included Sergio Ochoa's sentence and Navarro's sentence and the time served by Navarro. And in response to that, the court, who had done the sentencing in the case, the Roque case, asked, inquired, those weren't my sentences. So it made sense in context that it was an inquiry based on making sure she understood the record correctly. And Mendoza's sentence, another one relied on by some of these defendants, even though he's not here today, the court said that it would consider the Roque DTO sentences first. Well, that presumes that it would consider all those sentences that, in Mendoza's case, he'd submitted transcripts from a number of the Ochoa Contreras sentencings, that it would consider those second. It didn't say, the court did not say that it was only considering the sentences it had imposed. And Richard Roque, in this case, wants you to rely on the silence of the court, that it did not expressly reference Contreras' particular sentence as evidence that the court misunderstood 3553A6. And that just simply nothing in the context of this record indicates it. To the contrary, the court accepted all the information to the extent it was presented by any of these defendants. It accepted information regarding the Ochoa Contreras DTO. It wouldn't have done it if it thought it was prohibitive from even considering it. And in the case of Ivan Diaz, their co-defendant, who was sentenced prior to Richard Roque's sentence, prior to a number of these other defendant's sentences, it expressly considered, the court did, Ivan Diaz's argument based on, disparity argument based on Ochoa Contreras defendants. And again, that sentencing happened only less than three weeks before Richard Roque's sentence. In short, in the context of this entire record, in the totality of the record at this advises, the must be examined. There is no basis to conclude this court misunderstood it. And I would also add that in making this argument, the government is not abandoning in any way, shape or form its forfeiture argument. That was, that we rely on Prado. It was this court in Prado that said, if a court is misunderstanding at the legal standard that it's applying, it's incumbent upon the parties to make, in order to preserve their objection to let the court know. And here, if they're saying that, and you know, in response to the court saying, neither of these are my sentences, Edgar Roque's attorney did not say, but your honor, that's irrelevant. You're applying the wrong standard or anything to that effect. Yes, he went on and argued about Edgar, Edgar, about Ochoa, which only suggests that he didn't even perceive. And I would submit that's what happened here. These defendants counsel in the district court did not even perceive that the court was misinterpreting the statute. And in fact, the court did not. Although it's kind of interesting because what we typically have seen in these disparity cases is a defendant saying, well, you've looked at the national level or you've looked at the district level or the judge level, but judge, we would like you to look at the individuals in this conspiracy. And, you know, for a period of time, it was thought that that wasn't the right thing. But at this point, understanding the discretion of the district court judge, the judge is entitled to do that. And it's a little inverted here. And what we also don't know, I mean, the judge never really just comes out and says, look, I just disagree with the sentencing philosophy that Judge Gettleman was applying to the Ochoa group. And I'm going to tether my sentences much more closely to the guidelines, which I find to be an appropriate level given the scope of this conspiracy. If she had ever said something like that, I don't even know if we'd be here. Well, she does not say those words. However, this court repeatedly, starting with the very first defendant in this case that she sentenced, Anthony Kuhn, from the very beginning, this court emphasized the level of drugs involved in this conspiracy, in this DTO, in the Roque DTO. And I think before I get into the specifics of the way she amply addressed the arguments to the extent they were made in the context of each sentencing in terms of the Cunningham argument, I think it's really important that the court get the context here of what this court actually found about this conspiracy. And Edgar Roque was the leader of the conspiracy. At his sentencing, he challenged, he completely challenged any of the of the guideline computations on the quantities for which he, he managed it blindly. He completely challenged the quantities of drugs for which he was being held accountable. So the court had a look at how much was being accountable here. The district court found that this conspiracy, that the Roque conspiracy, not the Ochoa-Conseras, and forgive me, the government has always referred to Roque as Roque, not Roque. And so that must be more in mind. So when I say that, I mean no respect, disrespect. I mean, it's, I'll try and say Roque. But the court found that this conspiracy, that Edgar Roque was accountable for 1,500, at least 1,500 kilograms of cocaine, at least. Richard Roque, when he pled guilty, and he was there from the very beginning, from 2010 all the way to the end, at least 500 kilograms of cocaine and 100 kilograms of heroin. Now let's look at the numbers that were involved based on the records submitted by these defendants, well in particular Mr. Mendoza, in the Ochoa conspiracy. The leaders of that conspiracy, Mr. Ochoa, Sergio Ochoa, and Contreras, they were both found to be a level 36 on the drug table, a base level 36. Now unfortunately, we don't have his, their PSR as part of this record. That could not be done. So I cannot, it's not part of the record, the exact calculations that the court made because they didn't contest that level 36. So the court never had to make a public finding and the government never had to make a public submission about it. But a level 36 under the guidelines is for no more than 450 kilos of cocaine and 90 kilos of heroin. And you know that the quantities involved in the Ochoa-Contreras conspiracy were far below that because those were combined. In other words, if you just had 450, you'd get a level 36. If you just had 90 kilos of heroin, you'd get a level 36. This conspiracy involved both as well as a kilo of fentanyl. So these numbers were far lower than that. And because you're calculating their advisory, you know, their base level, it included their relevant conduct. Well, each of them participated for two years as relevant conduct it was considered in the Roque conspiracy. So some of those numbers in those calculations have nothing to do with the Ochoa-Contreras conspiracy that started in about 2013. The point of this is, is that we are looking, as the judge said, at more drugs being pumped into the city of Chicago by the Roque drug operation than this at least 100 kilos of heroin. This was, no one is saying here that the Ochoa-Contreras DTO was a small DTO. It was not. These were both large operations dealing in wholesale quantities. These were both awful organizations. But in terms of looking at the numbers of traffic quantities here, Roque was the A-team. It was the A-plus team of drug dealing. And the court took that into account repeatedly. And it didn't even need to think about any other conspiracy, but its own experience, as it repeatedly said, repeatedly in every single sentencing, given the quantity, the massive harm being done here by this organization, I cannot, the court repeatedly said, it cannot depart downward from the guidelines. So with that as a backdrop, which I think is just a really important backdrop to this discussion, let me go through the defendants and in terms of their Cunningham argument. And let me start with Richard Roque, who would be the only defendant that squarely brought a disparity argument and developed it in any way, shape, or form, even arguably to the district court. Because I think it's very important that this court keep in mind of what was before this court and when it was before it. So when Richard Roque, in his, Roque, he is one defendant who in his pre, the only defendant in fact, in his pre, other than Mendoza, who's not here, but in his pre-sentencing submissions to the court, he did make a disparity argument and he made it about Contreras. And when he got to sentencing, along with numerous other, by the way, mitigation arguments for a low-guideline sentence. And when he got to the court in the sentencing hearing, he wrapped that Contreras argument into his request for a finding by the court that he was a minor player. That's where he put that argument. He didn't put it in mitigation, he stuck it in there. And so I think the court's comments on, it doesn't mean that argument went away, I'm not suggesting that, but I think the courts are, but because of where he put it, I think the court's comments regarding that minor player request are relevant. And when the court rejected that minor player reduction, the court found that Richard Roque was in this from the beginning, that he knew the scope of this DTO. He was Richard, Edgar Roque's brother and his right-hand man. He was not a leader. He was not a supervisor. But he was there from 2010 to the end. He even accompanied him to Mexico to arrange for importation of drugs. The judge said he was involved in planning. And he knew the scope of this huge conspiracy that the court had found just previously at Richard Roque's, at Edgar Roque's sentencing involved 1500 kilos of cocaine at least. And Richard Roque himself had admitted involved at least 100 kilograms of heroin. And the court said, this is a vital player in this conspiracy. And then that is all informative because then in the proceeding, the court goes to, it's an important context for examining the court's comments when the court addresses the Richard Roque's arguments in mitigation. Because in addressing his mitigation arguments, the court expressly states that it cannot look at the sentence, which was a below guideline sentence, that the defendant is recommending under the circumstances of this massive organization, which the court explained distributed huge quantities of drugs in the city, in period, and particularly in the city of Chicago. And then the court explained that it was imposing the sense that the bottom of the guideline range is appropriate because of the integral role this defendant played because of the volume of drugs. So in looking at the totality of the record and the way it was presented to the court, and the fact that Richard Roque, while he made the argument, he never submitted a single record to the court that showed or even began to show the quantity of drugs at level 36 that Contreras had been held accountable for. He did not provide that to the court at all. He relied on just saying generalities. He was a leader. It was a large conspiracy. So that's what the court had before it. And so to suggest, and also before the court had sentenced Richard Roque, he was like the seventh defendant sentenced, or maybe not seventh, but a number of defendants had been sentenced before him. The court had heard of Edgar Roque's sentencing, it happened about three weeks before, about the Ochoa-Contreras conspiracy and drug dealing. And it had found at Ivan Diaz's sentencing expressly that that was a smaller DTO, that it didn't do as much damage. And that is a bogus report. Can I ask you just a point of, and maybe this isn't in the record, so just please tell me if sentences that many of the Ochoa people actually received, but what I don't recall, and maybe it's just because it's too huge, is whether we know how those sentences related to the proper guidelines ranges for each of those people. We do. We do, Your Honor. And we know it because Mr. Mendoza, six months after these other sentences we've been talking about, he submitted their sentencing transcripts. And we do outline it in the brief. They all received substantially below guidelines sentences. Quite a bit below the guidelines, right? Substantially. Substantially. And that started with, when that judge sentenced those, that started with the very first defendant he sentenced, that judge sentenced, was extremely below guidelines. And then from that point on, he sentenced everybody in relation to that sentencing. And then the government spoke up, I remember in this conspiracy, I forget which defendant it was, but at one point, perhaps it was you, perhaps it was a colleague, said, I don't know that we need to take the Ochoa sentences as the point of reference. Words to that effect. Absolutely. And said, should not. Never said you could not, but certainly said you should not, Your Honor. That that was just out of line and should not be referred to. And so, again, with all of that happened, by the way, Your Honor, before Richard Roque's sentencing, which again, the government would maintain was the only defendant that even arguably framed this for the court. So let me turn to the other defendants and that were raising this issue. Edgar Roque. Again, he, again, I think context is critical here in fairness to the court and in following this court's precedent that you look at the totality of the record. In his pre-sentencing submissions and at argument, his main argument, his main approach to this case was, and again, you can read the sentencing and read the record and see, his main approach to this case was that Ochoa, Sergio Ochoa was in the same conspiracy I was in, Edgar Roque's position was. We were in the same big conspiracy starting in 2010 all the way to the end. And you know what, court and Your Honor and government, all those drugs you're attributing to me, they really should be attributed to Sergio Ochoa. All those stash houses you're attributing to me, they should be going to Sergio Ochoa. And all that leadership, you're saying me, who's the leader here? It's Sergio Ochoa. So it's in the context of that argument. Did he say exclusively Ochoa or jointly? Not exclusively, not exclusively, jointly, but Your Honor, jointly, but that Sergio Ochoa was the main leader. In other words, the whole idea was to minimize his thing. So even with the drugs, no, I did some drugs, but he did more of these. Stash houses, actually, he tried to really pin just on Ochoa, I believe, is my recollection. But with leadership, yes, he certainly said, I may have had some management role, but how many, I think his quote was, you know, how many leaders are there? There's one leader. So I say that to say that it's in response to that, that the government says, Your Honor, there were two drug operations here. Yes, they started together in 2010. And by the way, Richard Roque did not start, did not have a, sorry, Contreras, Contreras did not have a leadership role in the Roque DTO when it started. He worked, he was a crew member for Edgar Roque. But later on, they started together, Edgar and Roque and Ochoa in 2010. But by then, in 2012, and by certainly by 2013, Ochoa and Contreras had their own DTO. And that was a government's point. These are two separate organizations, you cannot keep attributing everything that happens to Ochoa. Edgar Roque continued in his operation. And that was the point. And it was in the context of that, that the government raised the sentence imposed on Sergio Ochoa. And the government raised the issue of disparity and that Sergio Ochoa's sentence should not lead the way here. And in response to that, literally at the end of sentencing, Mr. Ochoa then pipes up, Mr. Ochoa, Sergio, Edgar Roque joins in and says, I should be sentenced to the same as Sergio Roque. The government's not saying that didn't raise the argument. What we're saying is, it didn't sufficiently develop the argument to warrant any comment being needed to be made by the court. Because all he does, literally, it's just a few sentences saying, I'm the same. The government alleged that he distributed 7,000 kilograms of cocaine that Ochoa did. Ochoa was worse than me and he got a lower sentence. He offered nothing. At that point in the proceeding, he offered absolutely no evidence to the court. And in fact, the record does not support that they were the same. When the records came before the court, they weren't. Edgar Roque had a total offense level of 47, which had to be capped at 43, because he was held accountable for 1,500 kilograms of cocaine, 40 kilograms of heroin, importing cocaine and drugs from Mexico in possession of firearms. Ochoa had a total offense level of 39 based on a base offense level of 36, which as I reviewed before, involved substantially fewer amount of drugs and no importation enhancement, no firearms. They were different. And this defendant did not make his record. He did not develop his record in a sufficient way to require the court to comment on it. And it was his burden to do so. But as you've pointed out, the court, by the time the sentencing phase comes before the court, the court has developed quite a bit of familiarity with the other conspiracy. I mean, I don't think you can have it both ways. The court's aware of this. No, Your Honor, not by the time of Edgar Roque. No. Edgar Roque was the first defendant to raise this. That is not the case. Ivan Diaz came after Edgar Roque. Mendoza's submissions to the court were six months after Edgar Roque. And this was the case that started this. Edgar Roque, none of this is before the court. None of this is before the court at the time of Edgar Roque's sentencing. Now, I would not say the court had no familiarity with it because, of course, because Edgar Roque had argued that Ochoa was more responsible. He had thrown out numbers. He had definitely thrown out numbers. Sure. But throwing out numbers. But he also alleged they were in the same conspiracy. As the government pointed out, they were not. You know, I mean, after 2013, one of these numbers when they were, when you were doing the two cases. So I would say Edgar Roque did not make his record at this point. And in fact, the government had shown the court with a record that he was laying out, suggesting that was one big conspiracy and that Edgar Roque was responsible, Ochoa was responsible for Edgar Roque's actions, was undermined by the position the government presented at the time. As to Philip Diaz, Philip Diaz, again, he made the same argument Ochoa did, that this was one big conspiracy. And his counsel in argument to you now said, and I wrote this down, if he just argued for a general sentence and didn't cite 3553A6, then it's okay that a covered the disparity issue. That's exactly what he did. He never mentioned section 3553A6. He never mentioned disparity. Not before, with respect to, I should clarify, he did with respect to defendant, co-defendant Coon, with respect to Contreras. He never did. What he argued again, both before and at sentencing was this was one big conspiracy. Ochoa and Edgar Roque, they were the head of it. I was just a lowly courier. That was me. That was it. And when he says he recommended a sentence of 180 months, there is nothing in the record to suggest that he did that based on Ochoa's sentence, because what he said to the court was, I want 120 months, which was a mandatory minimum, or 180 months, which probation suggested. And there's nothing in the probation reports that suggest it was doing that based on Ochoa's sentence. So it's not like he said, I want 180 months, like Contreras, like Ochoa. He said, I want between 120, the mandatory minimum, 180, which probation recommends, because I'm less culpable than Edgar Roque, than Ochoa. He did not make that to give me a sentence within my guideline range would cause an undue disparity. In this court, he seems to be emphasizing the Cunningham point that he had this. But he didn't make it. Absolutely. He didn't make a Cunningham argument there. And also, and this isn't a defendant that didn't know how to make it, because he made it as to Kuhn. As to co-defendant Kuhn, he argued, he cited 3553 A6, both before sentencing and at sentencing. He argued that it would cause an undue disparity. The court expressly rejected it by saying that the sentence here is significantly based upon the roles of the different conspirators in this case. And in fact, his guideline range of 150 to 450 months was, sorry, of 292 to 365 months was double that of Kuhn's, which was 108 to 135 months. But I would just say he doesn't make it. And as far as Ramirez, it has never been our argument that the court, who makes the disparity argument regarding Sanchez, it has never been the government's argument that the sequencing of sentencing mattered. This court's precedent makes it clear it does not matter when you're sentenced. If you make a disparity argument, there's no reason, we're not saying it couldn't be considered. I'm just saying, we're the government saying he never made a disparity argument as to Mendoza. He made it as to Sanchez, and the court responded. If his argument instead is, okay, I didn't make the argument, but the court still needed to consider it. Well, then this court's precedent is positively clear that the fact that he gave Ramirez a within-guideline sentence, it takes care of any disparity consideration. The court considered the disparity because he gave him a guideline sentence, and the guidelines are an anti-disparity formula. I would like to mention one more thing before leaving this topic, and that is Judge Sykes' point about that anti-disparity formula of the guideline range kind of doing away with these Cunningham-type arguments. There is tension, I would say, in looking at the cases, there is tension in this court's guidelines cases on that point. In some cases, there is that indication that when you give a guideline sentence, the court has spoken on the factor of disparity, but there's also cases where the court gives a guideline sentence, and this court goes ahead and considers under Cunningham whether the district court addressed disparity arguments raised. So that's why the government has appointed it this way. There is some tension in your case law, so that is why, you know, the government's not taking the position that there can't be a Cunningham argument here. The government's position is simply that it either didn't rise to a Cunningham argument because the court wasn't required under this court's precedent to deal with these arguments, or that the court sufficiently addressed it. Just in the few minutes I have left, I do want to turn to Mr. Cervantes and Mr. Sanchez. As to Mr. Cervantes, the defendant forfeited the minor role argument. That's clear under this case in United States v. Butler. And whether it be a clear error or a plain error standard, this defendant was not substantially less significant than that of the average conspiracy member here. He participated for about 18 months. He took numerous career trips. He provided counter-surveillance in a 10-kilogram heroin shipment. He helped out at the stash house, and while the defendant contended there was no evidence of that, if you look at his plea agreement, which is in the record at 382 at page 4, he admitted that he, along with others, maintained a stash house. And he was accountable for 170 kilograms to 10 kilograms of heroin. In the record, and there was no clear error, much less plain error here. In terms of Mr. Sanchez and the supervised release conditions, the government's strongly held position is that there's no inconsistency here between the court ordering no contact with co-defendants and the order that lists everybody. Coon and Achella were his co-defendants in the first, second, third indictment. Earlier in this very sentencing proceeding, when the government was making its argument about the sentence to be imposed, it referenced co-defendant Coon as Sanchez's co-defendant to no objection, to no confusion by the court. All the parties understood that Sanchez, that Coon was Sanchez's co-defendant in any actual meaning. And to suggest that, using the word co-defendant here meant it could be a co-defendant in some other case, in any other circuit, or something like that, is just not supported by the record or plain language. Why doesn't it make sense though to look at the co-defendants in the operative indictment, which here was the fourth superseding indictment? I mean, what's the point of having an operative indictment? Well, I think because they were, at this point, no indictments had been dismissed at this point. I mean, at most, Your Honor, it was ambiguous. At most, this was ambiguous. And if it was ambiguous, then it was clarified when the court listed everybody's name in its final order. Those two names, then, seems like other names floated in and out of this case earlier on. Well, I think all the defendants in there were in the last indictment except Coon and Adjani. I mean, so I'm just saying, if you're saying it's one big party, then that's one thing. If you're saying it's the fourth superseding indictment plus two, you know, why not plus some other number? Well, I think it just wasn't, I think it was understood by everybody at this sentencing what co-defendants meant. It was understood in the argument at the sentencing when the government was referring to what happened here and referred to Coon as co-defendant. But even if it, at most, this is ambiguous in the context of this case, Your Honor. I see my time is up. So for the, the government would respectfully rest for everything else on its brief and respectfully ask the court to affirm the convictions and sentences in this case. Thank you very much. Mr. Hillett. Be brief, Your Honor. The government's a bit of a moving target now, whether the language was ambiguous or not. It was not ambiguous. The sentencing transcript shows what was said. That's where we need to look, compare that to the written judgment. Also, my client wasn't required to object. Whatever understanding the government thinks is conveyed, it's not to be accepted. We are to gauge that by the written words in the transcript. It does not show there is the understanding and Judge Wood, you are absolutely correct to look at the operative documents. That's what we did in the case. That's what the court should do here now. With that, I would cede the balance of my time to defense counsel, if that's okay with the court. Thank you. All right. Thank you, Ms. Eisenman. Thank you very much. I wanted to first comment on Chief Judge Sykes' very important question regarding how to harmonize these two lines of case law. And I agree that there is some tension there because I think the arguments don't always, don't overlap all that often. And the way I see it and the way I think this court has harmonized it already in the Castaldi case, and this I kind of addressed in our reply brief, page seven, footnote three, is that the default rule is A6. You don't have to, if you give a within guidelines sentence, Oliver, a bunch of other cases say you don't have to, the judge does not have to address disparity. That's the default rule, unless Cunningham applies. And where Cunningham applies is where there's a principle argument that is not so weak as to not merit discussion. That's it. That means the court has to address it. You get out of the default rule and then you get into Cunningham. And that's the way I read all of this court cases. In those Oliver and other cases, there wasn't a Cunningham argument. It wasn't a principle argument in mitigation. And that's why this court felt comfortable saying, okay, it's an A6 argument. You got a within guidelines sentence. The judge already took it into account. That makes total sense. But it has to be that you can have to have some sort of still, oh shoot, I'm out of time. Some sort of obligation under Cunningham to discuss a principle argument in mitigation. That has to be a case. You can't just say Cunningham applies unless you're arguing disparity and then the judge never has to discuss it. That doesn't make any sense. Anyway, I can pick up Mr. Hillis' remaining time. Go ahead. You can conclude your rebuttal argument. Sorry. I also just wanted to say that in this case, I just fundamentally disagree with the government's argument that Edgar did not make a principle argument in mitigation. Again, it's just, it's not an incredibly difficult standard. Look at our appendix at 24 through 26. This was his only mitigation argument. I don't know how much more clear you can make it. He says disparity over and over again. He says Sergio Ochoa. And the district court said nothing, absolutely nothing. The government wants you to look at Ivan Diaz's transcript. That's not here. That's not in Edgar Roque's sentencing. In fact, Ivan Diaz was sentenced after Edgar Roque. There's nothing here. I'm not saying the judge had to buy it. I'm not saying the judge had to give him the same sentence, but the judge needed to address it. Thank you so much for the extra time. And I request that the case be remanded for resentencing. Thank you. Thank you very much. Ms. Waters. Thank you, your honors. I only have a short amount of time, so I just wanted to respond to the government's factual characterization of their record. It said that these sentencing records, especially with respect to Sergio Ochoa, that he had a wildly different quantity and that it was much less. But Sergio Ochoa had the same guidelines that Mr. Diaz had. That was a level 39 ultimately. And instead of having sentences that were commensurate with one another, Mr. Diaz has this sentence that is six years higher for the same amount of drugs. But the government also said something that I'd like to respond to, that at the time of these sentencing, the district court had no idea about the quantity of Sergio Ochoa's drugs. And that is just not accurate based on the record for this court. As the government mentioned, there were evidentiary hearings that took place for Edgar Roque. And we included in our appendix a portion of that witnesses testified that for several months, Mr. Ochoa obtained five kilos of cocaine per week. And that for seven to nine months, he increased that quantity from 15 to 20 kilos per week. And that's the place in the nine months. So just a conservative estimate of the amount of drugs would account for his participation in the Roque conspiracy would be almost 790 kilos. And that ultimately held responsible for in the other conspiracy. So I think actually what happened here is that you had two different prosecutors and the prosecutor in the Sergio Ochoa case recommended a 181 sentence. It's not as if the judge went so far below the guidelines based on some reason that we don't have access to. The government recommended the 181 sentence. And so for those reasons, we would ask the court to vacate Mr. Diaz's sentence and remand for resentencing. Thank you. Thank you very much. Yes. I want to make three points just briefly, if I can. First of all, rule 51 B of the rules of criminal procedures should govern the standard of review here, just like any other case, there shouldn't be some special Penice type of rule. The issues were preserved for appellate review and de novo review should apply here because they argued and raised in the district court. Second, I want to address the factual claim that the government makes that the court, the sentencing court didn't understand or have some cognition of the scope of Mr. Contreras involvement in drug dealing. And I would refer you to pages eight and 24 of 26 to 24 to 26 of the sentencing memo filed by Richard's counsel in which he quotes from the sentencing transcript. He tells the court that from 2010 until December of 2013, that Mr. Contreras worked for the Roque conspiracy. And in particular, he references laundering millions of dollars of drug proceeds, references the forfeiture allegation in the Contreras indictment of 4.3 million. And so, and references the sentence or part of the sentencing memorandum the government filed with the court in Contreras about Contreras trafficking enormous amounts of cocaine and heroin to Chicago. So while it may be that the government that the court did not know the precise amounts of which Mr. Contreras was accused in the other matter, it certainly had a awful lot of detail before it, from which it was clear that he was very involved in trafficking enormous quantities and laundering millions of dollars. And with that, I would ask the court to remand for resentencing. And if in the event, it doesn't remand for total resentencing, if it could handle the correction of the errors on the supervised release conditions. Thank you. Thank you very much, Mr. Mohamed. Yes, thank you. To build on a point that Ms. Eisenin was making in her rebuttal, a guideline range sentence may initially start with a presumption of validity, but a presumption can be rebutted. And I think that collectively, we have done that during the trial. And if there's any other argument, as I understand it, I think my questions were aimed at the procedural question. And our cases do move in a couple of different directions, whether there's a procedural claim at all on a 3553 A six argument, when the sentences within guidelines are below guidelines. I mean, there is a need for clarity there. Understood, Your Honor, and thank you. I have nothing further to add. If another defense attorney would like to have my time, I'm happy to give that. All right. Thank you. I think only Mr. Nash is left. It's all yours. Thank you, Judge. Last but I hope not least. Mr. Cervantes, although his lawyer could have done a better job in the district court, he did not forfeit the issue of minor role. He brought his lawyer brought it up in connection with Angelica, his sister, was by any judgment, more culpable than he was. And if you look at our brief, what she did was substantially more than what he did. Gall and Rita both state that the first thing the district court must do is correctly calculate the sentence. That was not done here for the guideline range was not done here because the judge did not take into account minor role and it was discussed and he didn't operate any stash house. There's no evidence of that. In fact, he was not given any points for it. The government says that the burden of proof falls on the defendant. We start with the district court having to make the correct guideline calculation. She didn't do that in this case. The facts were all there before. They had been discussed in all the other cases. There's no question that he did, was a minor cog in this large conspiracy. In the government's brief, they talk about seven, not 15, but seven trips. And there were 161. And no matter how you parse that, that's a minor role. And he should have gotten a minor role adjustment. With that, I ask your honors to remand his sentence, remand his case to the district court for resentencing. Thank you. All right. Thank you very much. Thanks to all counsel. I think I speak for judges Wood and Brennan and the entire court in thanking you for your patience with these remote arguments. It's forward to seeing you all in person back in the courtroom as soon as that is reasonably feasible and safe. So you all look great and it's, it'll be good to see you back in the courtroom sometime, hopefully very soon. Thank you all very much for excellent arguments. The case is taken under advice.